Mark F. Anderson (SBN 44787)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, CA 94104
Ph: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiffs Richard A. Steiner & Carole J. Steiner

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Richard A. Steiner & Carole J. Steiner, | ) | Case No. |
| Plaintiffs, | ) | COMPLAINT |
| v. | ) | |
| OneWest Bank, FSB and Trans Union, LLC; | ) | Violations of the Fair Credit Reporting Act & the California Civil Code |
| Defendants. | ) | Jury Trial Demanded |

—

**Preliminary Statement**

**1.** This is an action for damages brought by an individual consumers Richard A. Steiner & Carole J. Steiner against defendants OneWest Bank, FSB and Trans Union LLC for violation of the Fair Credit Reporting Act and the Consumer Credit Reporting Agencies Act, Civil Code Section 1785.25(a).

**The Parties**

**2.** Plaintiffs Richard A. Steiner & Carole J. Steiner, husband and wife, are individuals who reside in Solano County, California.

**3.** Defendant OneWest Bank is a federal savings bank with its principal place of business in Pasadena, California. OWB has a multibillion portfolio of mortgage loans under management. OneWest is a furnisher as that term is used in the Fair Credit Reporting Act and Civil Code § 1785.25(a).

**4.** Defendant Trans Union, LLC ("TU") is a limited liability company that regularly conducts business in this district and is a national credit reporting agency the activities of which are subject to the terms of the FCRA.

**Jurisdiction & Venue**

**5.** The court has federal question jurisdiction over the FCRA claims pursuant to 15 USC §1681p and supplemental jurisdiction over the state law claims pursuant to 15 USC § 1367.

**6.** The defendants do business in this district.

**Description of the Case**

**7.** Plaintiffs purchased a single family residence as an investment property in Surprise, Arizona on March 25, 2004. Plaintiffs financed the purchase with a loan for $122,176 from OWB's predecessor IndyMac Bank, F.S.B.[1]

**8.** At the closing, plaintiffs gave IndyMac Bank a seven (7) year balloon promissory note for $122,176 at 5% interest. Concurrently, plaintiffs gave IndyMac Bank an addendum to the balloon note in the form of a conditional right to refinance the seven year loan. The addendum states that at the maturity if the balloon note, plaintiffs would be able to obtain a new loan for 23 years to refinance the balance due on the balloon note.

**9.** The conditional right to refinance the loan included certain conditions. One condition was that the borrowers must be occupying the single family residence. Before plaintiffs agreed to buy with property with financing from IndyMac Bank, plaintiffs told IndyMac Bank that they did

[1]OWB acquired the assets of IndyMac Bank from the FDIC in 2009.

not plan to occupy the residence, but instead were buying it for investment. IndyMac Bank's representatives said plaintiffs could disregard that condition and that when the time came, IndyMac Bank would refinance the property. Relying on that representation, plaintiffs agreed to sign the promissory balloon note and the addendum giving them the conditional right to refinance the property. At that time, the parties understood that plaintiffs were paying an additional 0.5% interest because the borrowers were not going to be occupying the house.

Plaintiffs' loan application clearly stated the property was for investment purposes and would not be owner occupied. When the documents were received for signing there were errors and so the documents needed to be rerun and resent to the title company at signing. When they were returned to the title company, the documents still showed plaintiffs occupying the property. Plaintiffs questioned the inclusion of that information; IndyMac Bank's representative told plaintiffs to disregard the owner occupied clause.

**10.** Plaintiffs made all payments required under the seven year note up to and including the payment due on April 1, 2011. An additional payment was accepted for payment beyond the balloon date for May 2011 but no payment was able to be made in June.

**11.** In or about December 2010, OWB sent plaintiffs documents for them to complete to extend the loan another 23 years; however, after plaintiffs submitted the documents, OWB refused to extend the loan for the reason that plaintiffs were not occupying the property. By April 1, 2011, the seven year balloon note matured. In that month, OWB told plaintiffs it would not refinance the loan by honoring the conditional right to refinance the loan because plaintiffs were not occupying the residence. Plaintiffs reminded OWB that IndyMac Bank had originally said it would not enforce that provision.

**12.** From May 2011 through June 2011, OWB would not accept any payments from plaintiffs. After numerous discussions between the parties in these months, OWB agreed to consider a new loan modifying the old loan.

**13.** In July 2011, plaintiffs submitted an application for the loan modification. In or about September 2011, OWB agreed to modify the old loan pursuant to the Home Affordable Modification Program (HAMP) for Fannie Mae loans. Under HAMP, borrowers agree to enter into a Trial Period Plan under which they are obligated to make mortgage payments over the next four months. If the borrowers make the payments, the mortgage company ordinarily agrees to a permanent modification of the mortgage.

**14.** At the time OWB offered to modify the loan, plaintiffs offered to make all the back payments and the current payment, but OWB refused. OWB said told the owners they had to be behind in their payments to qualify for a loan modification.

**15.** The only reason plaintiffs were behind in their payments was OWB refused to accept the payments; plaintiffs had accumulated all the rent payments in an account and were willing and able to pay any and all back payments at the time OWB agreed to modify the loan.

**16.** The Trial Period Plan called for three payments of $772.50 per month for three months. Plaintiffs made four payments on 9/7/11, 9/30/11, 10/28/11 and 11/25/11. Instead of crediting these payments to plaintiffs' loan account, OWB put the money in a suspense account.

**17.** These payments were never credited to plaintiffs' loan account; after plaintiffs made numerous calls about the payments; in May 2013, OWB sent plaintiffs a $2,166 refund with a letter of apology.

**18.** On December 31, 2011, plaintiffs signed a permanent loan modification under which OWB refinanced the loan balance of $108,396.41 at a fixed interest rate of 5%. Plaintiffs have made all payments required under the new loan. Plaintiffs later paid off the loan after selling the property.

**19.** This complaint concerns OWB's credit reporting in the period March 2011 through March 2013.

**20.** While the parties were disagreeing whether OWB was obligated to refinance the old loan (May to mid-July 2011) and while plaintiffs were making the agreed trial modification plan payments (September 2011 to December 2011), OWB reported to the three nationwide credit reporting agencies, Experian, Equifax and Trans Union, (the CRAs) that plaintiffs were late in making payments on the loan account.

**21.** Specifically, as of August 4, 2012,, OWB reported to defendant Trans Union and the other two CRAs that plaintiffs were 30 days late in June 2011, 60 days late in July 2011, and were 120 days late in September, October, November and December 2011. OWB reported status was unknown in the months of March through May 2011 and in August 2011. OWB reported plaintiffs were 90 days late as of January 2012. OWB also reported plaintiffs were late 120 days late in 2013.

**22.** As of August 4, 2012, Trans Union's credit reports for plaintiffs reported what is described in ¶ 19.

**23.** As of August 4, 2012, plaintiffs were attempting to purchase a single family home in Fairfield, California. However, plaintiffs' mortgage broker was unable to obtain a loan due to OWB's credit reporting.

**24.** On or about August 4, 2012, plaintiff Richard Steiner talked to a Trans Union representative about OWB's credit reporting. He informed Trans Union OWB's reporting was inaccurate and misleading and disputed the reporting.

**25.** As of January 28, 2013, plaintiffs' Trans Union reports were the same as described in ¶ 19, except that Trans Union added that the sum of $1,311 to $5,903 was past due in 2011.

**26.** On February 8, 2013 OWB sent plaintiffs a certified letter demanding full payment of the loan of $108,708 and threatening foreclosure. This time plaintiffs had the property listed for

sale at a low price for sale since plaintiffs did not want OWB to foreclose on the property.

**27.** On February 21, 2013, Trans Union sent plaintiffs an updated credit report that showed the OWB loan account was 30 to 120 days late in payments on the loan account in the period July 2012 through January 2013 even though plaintiffs had been making all payments due on a timely basis by automatic bank payments.

**28.** OWB lost some of the payments and refused other payments returning the checks to plaintiffs. Time and again, plaintiffs had to call OWB about its mistakes and to send new checks to cover the payments.

**29.** OWB on some occasions demanded proof of payment. In response, plaintiffs had to send OWB copies of their bank statements.

**30.** In February 2013, Plaintiffs sent Trans Union a dispute letter concerning OWB's credit reporting along with a copy of their payment history. On March 4, 2013, Trans Union sent plaintiffs a letter stating the dispute was frivolous.

**31.** In late February 2013, plaintiffs received an offer on the property and decided to sell at a less than market price in order for the loan to be paid off before foreclosure. However, OWB refused to provide a payoff quotation for a period thereby delaying the sale. At the same time, OWB refused to accept the monthly payments.

**32.** When OWB finally provided a payoff, plaintiffs knew it was overstated. Under threat of foreclosure, plaintiffs went ahead with the transaction. Later, OWB refunded some money, but some is still owed to plaintiffs.

**33.** On March 1, 2013, plaintiffs sent OWB a letter stating its inaccurate credit reporting was destroying their credit standing.

**34.** On March 8, 2013, escrow was closed and the loan paid in full.

**35.** On March 9, 2013, plaintiffs sent Trans Union a detailed letter disputing its reports

on the OWB account.

**36.** On March 22, 2013, and on April 6, 2013, Trans Union sent results of its investigation, which were that its reporting on the OWB account was unchanged insofar as the reporting in 2011. Trans Union was reporting plaintiffs were late as indicated in the following months:

May 2011: 30
June 2011: 60
July 2011: 90
Aug 2011: 120
Sept 2011: 120
Oct 2011: 120
Nov 2011: 120
Dec 2011: 90.

**37.** On March 25, 2013, Mr. Wesley Klepfer, Default Escalations Specialist, sent plaintiffs a letter that states OWB reported the account accurately as delinquent "since the system changes were still in process." He also stated that OWB would not compensate plaintiffs for faulty credit reporting.

**38.** After plaintiffs informed Trans Union that its credit reporting on the OWB account was inaccurate and misleading, Trans Union sent automated consumer dispute verification requests to OWB asking it to investigate the dispute. Upon receipt of the requests, OWB was obligated to conduct a reasonable investigation as to its credit reporting on the account. On each occasion, OWB failed and refused to conduct a reasonable investigation and instead merely verified its reporting as correct. At the same time, Trans Union was obligated to conduct a reasonable investigation, but it failed to do so.

**39.** The loan in question are owned by Fannie Mae. OWB services the loans. In servicing Fannie Mae's mortgages, OWB is obligated to comply with Fannie Mae's policies and procedures, which Fannie Mae publishes in its Servicing Guide.

**40.** Fannie Mae's Announcement 09-05R which it issued to "provide guidance to Fannie Mae servicers for adoption and implementation of the Home Affordable Modification Program (HAMP) for Fannie Mae loans."

**41.** Fannie Mae's Announcement 09-05R states that servicers should report the exact status of each mortgage loan that has been modified in accordance with the Fair Credit Reporting Act on the following basis:

- "For borrowers who are current when they enter the trial period, the servicer should report the borrower current but on a modified payment if the borrower makes timely payments by the 30th day of each trial period month at the modified amount during the trial period, as well as report the modification when completed."

- "For borrowers who are delinquent when they enter the trial period, the servicer should continue to report in such a manner that accurately reflects the borrower's delinquency and workout status following usual and customary reporting standards, as well as report the modification when completed."

**42.** OWB's credit reporting for the Trial Plan period was in violation of Fannie Mae's policy.

**43.** OWB's credit reports to the credit bureaus were inaccurate, misleading, and incomplete. The reporting was inaccurate because the account was never past due; on the contrary, plaintiffs made it clear they were ready and able to make the payments.

**44.** OWB's credit reporting was misleading because the reports by the credit reporting agencies would reasonably lead a creditor to believe plaintiffs had not paid the payments due under the mortgage loan on a timely basis. The reporting was incomplete the reports failed to state that plaintiffs made each payment due under a Trial Plan on a timely basis and that the only reason payments were not made was that OWB arbitrarily refused to accept their payments.

**45.** Despite plaintiffs' efforts, OWB and Trans Union willfully, intentionally, recklessly and negligently repeatedly failed to follow procedures that would correct the inaccurate, misleading and incomplete credit information.

**46.** As a result of defendants' conduct, plaintiffs have suffered actual damages in the form of (a) lost credit opportunities, b) harm to credit reputation and credit score, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiffs will continue to suffer the same for an indefinite time in the future, all to plaintiff's great detriment and loss.

**47.** Defendant OWB is a subscriber to the CRAs. As such, at least once a month, OWB electronically transmits its customers' account information to CRAs. Each such transmission includes changes, additions and deletions of customers' account information.

**48.** Plaintiffs' account status was included in each of OWB's monthly transmissions of information to the CRAs.

**49.** In addition, each time plaintiffs sent a dispute letter to the CRAs, the CRA contacted OWB by electronically sending it an Automatic Consumer Dispute Verification (ACDV). The ACDV notified OWB that plaintiffs were disputing its report that plaintiffs were late in making payments on the account.

**50.** Upon receipt of each ACDV, OWB was required to conduct a reasonable investigation of the dispute and to then report back to the CRA the results of its investigation. The CRA in turn reported the results to plaintiffs.

**51.** Each time OWB responded to an ACDV from a CRA it included a report that plaintiffs had been over late paying their mortgage payments in 2011 and January 2012.

**52.** When OWB transmitted the loan account information, it knew that the CRAs would sell the credit information to anyone who had a permissible purpose to obtain the credit information and who was willing to pay the CRAs fees. Such persons include banks, finance companies and others that are in the business of loaning money to consumers.

**53.** Potential credit grantors that were considering extending credit to plaintiffs sought and obtained plaintiffs' credit reports from one or more of the CRAs.

**54.** During the two years preceding the filing of the complaint in this action, various credit grantors obtained plaintiffs credit reports, which included OWB's reports that they were late in making their mortgage payments.

**55.** During the two years preceding the filing of the complaint in this action, various credit grantors obtained plaintiffs credit reports, which included OWB's report that they were late in making her mortgage payments.

**56.** Each time a CRA sold a copy of plaintiffs' credit reports to a potential credit grantor, plaintiffs were damaged. Each such sale was a separate publication of OWB's misleading report that plaintiffs had been late in making 2011 and January 2012 mortgage payments.

**57.** Credit scores are used by credit grantors to decide whether to extend credit. The credit scores are primarily based on the contents of the consumer's credit reports published by the CRAs. Plaintiffs' credit scores were adversely affected by OWB's inaccurate credit reporting.

**58.** Each transmission by OWB of a report that plaintiffs' had been over 30 days late in making their mortgage payments sent to a CRA and each publication of plaintiffs' credit reports by a CRA to a credit grantor was a violation of Civil Code § 1785.25(a).

**First Claim: Violations of the Fair Credit Reporting Act—Against Trans Union LLC**

**59.** Plaintiffs incorporate by reference ¶¶ 1 through 58.

**60.** The Fair Credit Reporting Act provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consume notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 USC

§ 1681i(a)(1) (A).

**61.** In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

**62.** Within the two years preceding the filing of this complaint, Plaintiffs notified TU of inaccuracies contained in its reports and asked it to correct the inaccuracies.

**63.** Trans Union failed to conduct a reasonable reinvestigation of the inaccuracies that Plaintiffs disputed.

**64.** Trans Union failed to review and consider all relevant information submitted by Plaintiff.

**65.** Trans Union failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiff's credit reports, information and file in violation of 15 USC § 1681e(b).

**66.** As a result of the above-described violations of § 1681i and § 1681e(b), plaintiffs have sustained damages.

**67.** Trans Union's violations of the FCRA were willful and therefore plaintiffs is therefore entitled to also seek statutory and punitive damages.

**Second Claim: Violations of the Fair Credit Reporting Act—Against OWB**

**68.** Plaintiffs incorporate by reference ¶¶ 1-58.

**69.** The FCRA requires a furnisher such as OWB, after receiving notice from a credit reporting agency that a consumer disputes information that is being reported by a furnisher, to conduct an investigation with respect to the disputed information, to review all relevant information, to report the results of the investigation to the credit reporting agency, and, if the investigation reveals that the information is incomplete or inaccurate, to report those results to all

other credit reporting agencies to which the furnisher has provided the inaccurate information.

**70.** Within the last two years, the defendant provided inaccurate and misleading information to the credit reporting agencies.

**71.** The defendant violated sections 1681n and 1681o by engaging in the following conduct that violates 15 U.S.C. § 1681s-2(b):

(a) willfully and negligently failing to conduct an investigation of the inaccurate information that plaintiff disputed;

(b) willfully and negligently failed to review all relevant information concerning plaintiffs' accounts;

(c) willfully and negligently failing to report the results of investigations to Trans Union;

(d) willfully and negligently failing to report the inaccurate status of the inaccurate information to the credit reporting agencies;

(e) willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by the credit reporting agencies concerning the inaccurate information disputed by plaintiffs;

(f) willfully and negligently failing to provide the credit reporting agencies with the factual information and evidence plaintiff submitted to defendants that proved that the information concerning plaintiffs' credit reports was inaccurate;

(g) willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning plaintiffs' account to the credit reporting agencies; and

(h) willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-s(b).

**72.** As a result of the above-described violations of § 1681s-2(b), plaintiffs have been damaged.

**Third Claim: Violations of the California Consumer Credit Reporting Agencies Act, California Civil Code §§ 1785.25 (a) – Against OWB**

**73.** Plaintiffs incorporate by reference ¶¶ 1-72.

**74.** California Civil Code § 1785.25 (a) states that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate."

**75.** OWB negligently and willfully furnished information to the credit reporting agencies it knew or should have known was inaccurate, misleading, and incomplete.

**76.** OWB failed to conduct a reasonable investigation as to whether its credit reporting was accurate, misleading or incomplete.

**77.** Based on these violations of Civil Code § 1785.25 (a), plaintiffs are entitled to the remedies afforded by Civil Code § 1785.31, including actual damages, attorney's fees, pain and suffering, injunctive relief, and punitive damages in an amount not less than $100 nor more than $5,000, for each violation as the Court deems proper.

**Fourth Claim: Breach of Contract– Against OWB**

**78.** Plaintiffs incorporate by reference ¶¶ 1-58.

**79.** The parties had a written agreement in the form of a promissory note and addendum under which OWB loaned plaintiffs money to purchase the residence described in this complaint.

**80.** OWB assumed the role of the servicer of the mortgage.

**81.** Under the agreement and as the mortgage servicer, OWB had a duty to maintain accurate records of the financial transactions between the parties. OWB had a duty to post checks and other means of payment in a timely manner to plaintiffs' loan account.

**82.** Defendant OWB also had a duty of good faith and fair dealing in handling plaintiff's funds.

**83.** Defendant OWB breached its duty to accurately maintain records of plaintiffs and to post checks and other means of payment to plaintiffs' loan account in a timely manner.

**84.** As a result of OWB's breach of its duties, plaintiffs were damaged in amount to be determined at trial.

**PRAYER**

WHEREFORE, plaintiffs pray for judgment as follows:

1. Actual, statutory and punitive damages;
2. Injunctive relief;
3. Costs and attorney's fees; and
4. Such other relief as the Court may deem proper.

Dated: November 18, 2013.

ANDERSON, OGILVIE & BREWER LLP

By /s/ *Mark F. Anderson*
Mark F. Anderson
Attorney for Plaintiffs

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

Dated: November 18, 2013.

ANDERSON, OGILVIE & BREWER LLP

By */s/ Mark F. Anderson*
Mark F. Anderson